**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CHRISTOPHER CULLEN,

       Plaintiff,

v.                                                  CV 06-0341 MV/WPL

HATCH, T., WARDEN G.C.C.F.,
G.E.O. INC., VIGIL, M., STATE MONITOR, G.C.C.F.,
WILLIAMS, J., HEAD OF CORRECTIONS,
SEDILLO, E., DEPUTY SECRETARY OF OPERATIONS,

       Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff Christopher Cullen, an inmate at the Guadalupe County Correctional Facility, filed a complaint alleging that prison officials burdened his constitutional rights when they exhibited "deliberate indifference" to his "religious and ethnic beliefs" by denying him access to a deck of Tarot cards. (Doc. 16 at 1.) Plaintiff's complaint does not specify the Constitutional provision violated nor the statutory basis of his suit. Because Plaintiff is proceeding *pro se*, however, I will construe his complaint as a suit filed pursuant to 42 U.S.C. § 1983, alleging a violation of the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Due Process and Equal Protection Clauses, and as a complaint alleging a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). The matter is before me on Defendants Hatch and the GEO Group, Inc.'s Motion for Summary Judgment. (Doc. 16.)

**BACKGROUND**

In January of 2005, Plaintiff purchased a Celtic Dragon Tarot card set from "Music by Mail,"

an online vendor. (Doc. 16 at 2; Doc. 18 at 1; Doc. 16 Ex. A.) The Facility prohibits prisoners from possessing and using Tarot cards. (Doc. 16 Ex. I.) Upon the Facility's receipt of the Tarot card set on March 16, 2005, the Property Officer identified the set as contraband and confiscated it. (Doc. 16 Ex. B.) The Property Officer filled out a "Confiscation and Disposition of Contraband" form. (Doc. 16 Ex. B.) Plaintiff refused to sign this form. (Doc. 16 Ex. B.)[1] Subsequently, the Facility returned the Tarot card set to the vendor. (Doc. 16 Ex. B.)

On March 30, 2005, Plaintiff, in response to the confiscation of the Tarot card set, filed an administrative grievance seeking the set's return. (Doc. 16 Ex. C.) During the course of the investigation, the Chaplain at the Facility, Sister Vicentia Dorsey, informed the Grievance Officer that Plaintiff had not indicated any specific religious beliefs. (Doc. 16, at 2; Doc. 16 Ex. D.) The Chaplain appears to have based this statement on Plaintiff's Pre-Sentence Report, which lists his religion as "atheist," on Plaintiff's Master Record Entry, which lists his religion as "Adventist," and on Plaintiff's failure to inform her that "he practiced any religion whatsoever." (Doc. 16 Ex. D, F, & G.) Based on these findings, the Grievance Officer investigating Plaintiff's grievance determined that "tarot cards are not necessary for religious purposes." (Doc. 16 Ex. C.) The Warden of the Facility approved the Grievance Officer's recommendation. (Doc. 16 Ex. C.) Plaintiff then appealed the denial of his grievance to the Corrections Department. (Doc. 16 Ex. C). On June 20, 2005, Erma Sedillo, the Deputy Secretary of Operations for the Corrections Department, denied Plaintiff's appeal. (Doc. 16 Ex. C.) On March 16, 2006, Plaintiff filed suit against Timothy Hatch, the GEO Group, Inc., M. Vigil, J. Williams, and E. Sedillo. (Doc. 1 Ex. A.)

---

[1] In his Grievance, Plaintiff stated that he was given a Debit Memo and not a confiscation form. In a Memorandum dated June 21, 2005, the Grievance Lieutenant denied Plaintiff's grievance due to the absence of evidence presented to support Plaintiff's claim. (Doc. 18 Ex. 2.)

#### STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "[S]ummary judgment cannot be granted merely because a nonmovant fails to submit affidavits or other materials supporting existence of a genuine issue of material fact." *Regents of the Univ. of N.M. v. Knight*, No. CIV 99-577-JC/WWD, 2000 U.S. Dist. Lexis 22376, at *15 (D.N.M. Sept. 20, 2000). Rather, "[t]he movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). A party "that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* "A material fact is one which may affect the outcome of the suit under the governing law." *Rocking Chair Enters., L.L.C. v. Macerich SCG, Ltd. P'ship*, 407 F. Supp. 2d 1263, 1265 (W.D. Okla. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

#### DISCUSSION

Defendants assert two arguments in their Motion. First, Defendants contend that Plaintiff "never indicated to anyone at [the Facility] that he practiced a religion which required the use of Tarot cards" and thus cannot demonstrate a violation of his constitutional rights. (Doc. 16 at 5.) Second, Defendants contend that Plaintiff cannot establish a basis for the assessment of municipal liability against GEO. (Doc. 16 at 7.) In addition to Defendants' arguments, I address Plaintiff's claim under the Fourteenth Amendment's Equal Protection and Due Process Clauses and RLUIPA.

**Plaintiff's Claims for Deprivation of his Constitutional Rights**

*Plaintiff's Claim Under the
First Amendment's Free Exercise Clause*

In their Motion, Defendants assert that Plaintiff never established a connection between the Tarot cards and a sincerely held religious belief. (Doc. 16 at 5.) According to Defendants, "Plaintiff never indicated to anyone at the GCCF or the DOC that he practiced a religion which required the use of Tarot cards" and that Plaintiff "never connected his desire to possess Tarot cards with any sincerely held religious belief." (Doc. 16 at 5.) Defendants, therefore, contend that Plaintiff's failure to connect Tarot cards with a sincerely held belief renders Plaintiff's free exercise claim meritless.

Section 1983 provides an enforcement remedy for one who is deprived under color of state law of "any rights, privileges, or immunities secured by the Constitution" and "offers private citizens a cause of action for violations of federal law by state officials." 42 U.S.C. § 1983; *Williams v. Bitner*, 359 F. Supp. 2d 370, 374 (M.D. Pa. 2005). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"To establish a civil rights claim, the plaintiff must show a 'deprivation' of a constitutional or statutory right by a person 'acting under color of state law.'" *Williams*, 359 F. Supp. 2d at 374-75 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). Section 1983 "does not include [] an independent state-of-mind requirement." *Shaheed v. Winston*, 885 F. Supp. 861, 868 (E.D. Va. 1995). Rather, § 1983 serves as an enforcement mechanism to vindicate statutory or constitutional rights. The "underlying constitutional right," therefore, provides the legal standard against which a

4

defendant's conduct is to be assessed. *Id.*

Under the Free Exercise Clause, prison officials must "afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs." *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). In the prison context, however, such rights are "subject to prison restrictions rationally related to legitimate penological interests." *Id.* Before addressing whether the challenged regulation or conduct is rationally related to legitimate penological interests, "the inmate must first establish the existence of a sincerely held religious belief, and that the challenged regulation [or conduct] infringes upon that belief." *Iron Eyes v. Henry*, 907 F.2d 810, 813 (8th Cir. 1990); *Rayes v. Eggars*, 838 F. Supp. 1372, 1378 (D. Neb. 1993).

An allegation that prison officials were unaware of a plaintiff's religious beliefs is insufficient to establish that the challenged conduct infringes on those beliefs. *See Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (dismissing the plaintiff's First Amendment claim where the plaintiff could provide no evidence that he informed prison officials of his religious beliefs); *Rayes*, 838 F. Supp. 1378 (concluding that "the undisputed facts are insufficient to permit a rational finder of fact to conclude that the challenged regulations or Defendants' conduct infringed upon Plaintiff's religious beliefs inasmuch as Plaintiff never complained that consuming [food containing meat] violated his religious beliefs"); *cf. Shaheed*, 885 F.Supp. at 868 (holding that the defendants were not liable for negligent violations of the plaintiffs' free exercise rights where the failure to accommodate the plaintiff's religious belief merely resulted from a misunderstanding). The word "prohibit," within the meaning of the First Amendment, connotes more than an unintentional infringement of a plaintiff's religious exercise. *Shaheed*, 885 F.Supp. at 868. Instead, the word

5

"suggests 'a conscious' act, rather than mere negligence" or unawareness. *Id.* Whether Defendants were aware, or should have been aware, of Plaintiff's sincerely held religious beliefs at the time Defendants confiscated and disposed of Plaintiff's Tarot card set is, therefore, an essential element in Plaintiff's § 1983 claim against Defendants. *See Rayes*, 838 F. Supp. at 1379 (concluding that "[n]either Defedants' conduct nor prison regulations impinged upon Plaintiff's religious beliefs because he never communicated a religious objection to being fed [food containing meat]" and that "Defendants could not honor a request that was unknown to them; that is, Defendants' conduct was not the proximate cause of any injury to Plaintiff's First Amendment religious rights").

Rule 56(c) requires the moving party to make a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Defendants' Motion satisfies their prima facie burden of showing that Plaintiff never indicated a connection between the Tarot card set and a sincerely held religious belief. *See Thom*, 353 F.3d at 851. Defendants' Motion, which states that "Plaintiff never indicated to anyone [at the Facility] that he practiced a religion which required the use of Tarot cards," adequately points the court to a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. (Doc. 16 at 5.) Additionally, Defendants presented an affidavit in which the Chaplain stated that "[a]t no time did Mr. Cullen ever indicate to me that he practiced any religion whatsoever, let alone one that required the use of Tarot cards. In fact, the Pre-Sentence Report lists Mr. Cullen's religion as 'atheist.' Mr. Cullen's Master Record Entry lists his religion as 'Adventist.'" (Doc. 16 Ex. D.) Defendants, therefore, have satisfied their prima facie burden under Rule 56(c).

When the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. PROC. 56(e)). To meet his burden under Rule 56(c), Plaintiff must produce specific facts showing that Defendants were aware, or should have been aware, of a connection between Plaintiff's religious beliefs and his use of the Tarot card set. Plaintiff failed to meet this burden. Plaintiff's own statements demonstrate Defendants' unawareness of Plaintiff's religious beliefs. Plaintiff states that "I was never asked by the chaplain Sister Dorsey about my beliefs at any time [sic] if she had done so she would know that I am an ordained minister and have been since the 6th of March, 2004. I am secular in my beliefs and have no particular religious affiliations and I believe in the rights of people to learn about various religions so long as they do not infringe on the rights of others." (Doc. 18 at 4.) Such statements reflect Plaintiff's inability to demonstrate that Defendants were aware, or should have been aware, of the connection between Plaintiff's religious beliefs and his use of the Tarot card set. Moreover, Plaintiff's Pre-Sentence Report lists him as an atheist and his Master Record Entry lists his religion as Adventist. While Plaintiff's status as an Adventist may be a religious belief, Plaintiff has not pointed to this as a religious belief that he holds nor would status as an Adventist, on its own, notify Defendants of a religious belief requiring the use of Tarot cards.

Plaintiff does not argue, nor does he point to any facts to suggest, that the Facility's receipt of the Tarot cards should have reasonably led Defendants to be aware of his religious beliefs. *See Rayes*, 838 F. Supp. at 1378 ("Telling Defendants that Plaintiff did not eat meat is simply not the equivalent of telling them that he should not eat meat for religious reasons."). Additionally, Plaintiff points to no evidence that the confiscation of his Tarot cards prompted him to protest an infringement of his Free Exercise rights. Rather, according to the prison official who confiscated the Tarot cards, Plaintiff "said it was not our [the confiscating officers'] fault and to do what we had to

7

do." (Doc. 16 Ex. C.) Moreover, Plaintiff's grievance does not mention a religious belief connected with the use of Tarot cards. This absence is notable. The grievance procedure provided Plaintiff an opportunity to notify prison officials regarding any religious beliefs connected with the use of Tarot cards. Plaintiff's grievance dated March 30, 2005, however, omits any mention of religion as the basis for his grievance. A reference to religion first appears in the appeals section of Plaintiff's grievance, dated May 12, 2005, where Plaintiff notes only that "No one as [sic] ever spoken to me regarding my beliefs."[2] (Doc. 16 Ex. C; Doc. 18 Ex. 2.) Accordingly, Plaintiff, the nonmoving party, has failed to satisfy his burden of presenting evidence that Defendants were aware, or should have been aware, of Plaintiff's sincerely held religious beliefs when Defendants confiscated and disposed of Plaintiff's Tarot card set and during the Plaintiff's subsequent grievance procedure.[3]

Defendants' Motion is also dispositive as to the non-moving Defendants. *See Malak v. Assoc. Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) ("[W]here one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate

---

[2] An effort to impose on Defendants a duty to inquire as to his religious beliefs underlies much of Plaintiff's argument. Plaintiff appears to argue that his First Amendment claim arises, in whole or in part, out of the absence of any inquiry by Defendants into Plaintiff's religious beliefs. I have been unable to find any authority suggesting that such a duty exists. *Cf. Eason*, 73 F.3d at 1328 (dismissing the plaintiff's Free Exercise claim where the plaintiff provided no evidence to demonstrate that prison officials were aware, or could reasonably have become aware, of his religious beliefs). Rather, seeking to impose such a duty on prison officials itself raises constitutional questions. *See Geronimo v. Local Sch. Bd. of Ruidoso Mun. Sch. Dist.*, No. Civ. 95-215 (D.N.M. Jan. 20, 1995) ("[T]he duty of inquiry Plaintiff seeks to impose upon Defendants raises significant First Amendment concerns in its own rights.").

[3] In light of my decision that Plaintiff fails to demonstrate that Defendants' conduct infringed on his sincerely held religious beliefs, it is unnecessary for me to address whether Defendants' conduct was rationally related to a legitimate penological interest.

opportunity to argue in opposition to the motion."); *see also Sports Racing Servs. v. Sports Car Club of America*, 131 F.3d 874, 892 (10th Cir. 1997) ("A court may grant summary judgment sua sponte 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'" (brackets in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986))). Defendants' Motion is equally effective in barring the First Amendment claim against the non-moving Defendants. Section 1983 liability against the non-moving Defendants hinges on whether prison officials violated Plaintiff's First Amendment rights. My decision that Plaintiff suffered no First Amendment deprivation bars Plaintiff's First Amendment claim against the non-moving Defendants. Moreover, Plaintiff has had an adequate opportunity to argue in opposition to Defendants' Motion. Accordingly, I recommend that Plaintiff's claim under the First Amendment's Free Exercise Clause be dismissed against both moving and non-moving Defendants.

*Plaintiff's Claim Under the
Fourteenth Amendment's Equal Protection Clause*

In their Reply, Defendants point out that "[t]he only constitutional provision that is arguably implicated in this case is the equal protection Clause of the Fourteenth Amendment." (Doc. 20 at 2.) I agree with Defendants' observation and conclude that, based on the liberal standards afforded to *pro se* litigants, Plaintiff's Complaint raises a claim under the Fourteenth Amendment's Equal Protection Clause. I am unable to resolve this issue, however, because Defendants raised it in their Reply brief, and not in the brief accompanying their Motion, and thus failed to provide Plaintiff an opportunity to respond to Defendants' argument regarding Plaintiff's claim under the Equal Protection Clause.[4]

---

[4] It is unclear whether Plaintiff's Response (Doc. 25) is a response to Defendants' Reply in their Motion for Summary Judgment, or a response to Defendants' Reply to Plaintiff's Second Motion for Default

9

*Plaintiff's Claim Under the Fourteenth Amendment's Due Process Clause*

Defendants point out that Plaintiff's Response "appears to assert that Defendants should be held liable based on the procedure by which the tarot cards were returned to the vendor, Music by Mail, and the procedure that was used to deny his grievance." (Doc. 20 at 3.) Defendants note that "Plaintiff's Complaint does not contain any allegations that could be construed as stating a due process claim, even under the liberal standards which apply to *pro se* plaintiffs." (Doc. 20 at 3.) While Plaintiff identifies the "Nature Of The Action" as Defendants' "Diliberate [sic] indiference [sic] against my religious and ethnic beliefs," Plaintiff also points out several procedural flaws associated with the confiscation of his Tarot cards and with the filing of his grievance. (Doc. 1 Ex. A.) Under the liberal standards afforded to *pro se* litigants, I construe Plaintiff's Complaint to raise a claim under the Due Process Clause of the Fourteenth Amendment. *See Hall*, 935 F.2d at 1110.

**GEO's Liability Under Section 1983**

In their Motion, Defendants argue that there is no basis for assessing liability against GEO. In the Tenth Circuit, a "private actor 'cannot be held liable *solely* because it employs a tortfeasor-or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (ellipses in original) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "Rather, liability only exists where the entity itself 'causes the constitutional violation at issue.'" *Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, No. 02-2140-JWL, 2003 U.S. Dist. LEXIS 15836, *75 (D. Kan. Sept. 8, 2003) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). To establish liability on the part of GEO,

---

Judgment. In light of this ambiguity, I am unwilling to conclude that Plaintiff's Response (Doc. 25) was filed as a pleading pursuant to Defendants' Motion for Summary Judgment.

therefore, Plaintiff must establish two elements. First, Plaintiff must establish that a GEO employee caused a constitutional violation. *Meyers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). Second, Plaintiff must establish that a GEO policy or custom "was the 'direct cause' or 'moving force' behind the constitutional violations." *Dubbs*, 336 F.3d 1194, 1215 (10th Cir. 2003) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985)). Because Plaintiff has not had an opportunity to respond to Defendants' arguments regarding the Due Process and Equal Protection claims, I am unable to resolve GEO's liability under § 1983.

## Plaintiff's Claim Under RLUIPA

The Religious Land Use and Institutionalized Persons Act provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person — (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."[5] *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). "The RLUIPA creates a higher standard of review for free exercise claims than that applicable to constitutional free exercise claims." *Hammons v. Jones*, 00-CV-0143-CVE-SAJ, 2006 U.S. Dist. LEXIS 7720, at *6 (N.D. Okla. Feb. 14, 2006).

---

[5] RLUIPA applies "in any case in which—(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. 2000cc-1(b). Because the RLUIPA issue has not been briefed, I will assume for purposes of this Motion that at least one of the prerequisites under 42 U.S.C. 2000cc-1(b) has been satisfied.

Although Plaintiff does not specifically refer to RLUIPA, I conclude, based on a liberal construction of Plaintiff's Complaint, that Plaintiff's Complaint raises a claim under RLUIPA. *See Hall*, 935 F.2d at 1110. The *Checklist for Filing a State Tort Complaint*, presumably given to Plaintiff prior to the filing of his Complaint, instructs prospective Complainants that they need not "worry about stating a statute or Case law." (Doc. 18 at 7.) In light of such an instruction, and considering Plaintiff's *pro se* status, I conclude that Plaintiff's Complaint raises a claim under RLUIPA.[6] *See Hammons*, 348 F.3d at 1258 (remanding case for the district court to construe whether *pro se* plaintiff's complaint stated a claim under the RLUIPA); *see also McEachin v. McGuinnis*, 357 F.3d 197, 199 n.2 (2d Cir. 2004) ("It is well established that 'the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.'"(quoting *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997))).

## CONCLUSION

For the reasons stated above, I recommend that:

1) Defendants' Motion as to Plaintiff's claim under the First Amendment's Free Exercise Clause be granted;

2) Plaintiff's claim under the First Amendment's Free Exercise Clause be dismissed as

---

[6] I previously concluded that Plaintiff fails to present significant probative evidence to create a genuine issue of material fact for trial regarding his Free Exercise claim under the First Amendment. This decision, however, does not necessarily resolve Plaintiff's claim under RLUIPA. With RLUIPA, Congress intended to "afford [prisoners] greater protection of religious exercise than what the Constitution itself affords." *Lovelace v. Lee*, No. 04-7797, 2006 U.S. App. LEXIS 32051, *17 (4th Cir. March 17, 2006). It is unclear, therefore, the appropriate legal standard that should be applied to an inmate's challenge to prison regulations that allegedly burden the inmate's religion. *See id.* at *42 ("Congress passed RLUIPA to give institutionalized persons greater protection of religious exercise than what the Constitution affords. Because the Constitution prohibits intentional burdens on free exercise, RLUIPA must, at a minimum, prohibit these burdens as well . . . We therefore need not decide today whether RLUIPA reaches beyond the Free Exercise Clause to prohibit conduct, such as deliberate indifference, that is less than intentional but more than negligent.").

      to all Defendants; and

3)     Plaintiff's Complaint be construed as raising a claim under § 1983 alleging a violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses and as a claim under the Religious Land Use and Institutionalized Persons Act.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.     13