**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CHRISTOPHER CULLEN,

       Plaintiff,

v.                                                      CV 06-0341 MV/WPL

HATCH, T., WARDEN G.C.C.F.,
G.E.O. INC., VIGIL, M., STATE MONITOR, G.C.C.F.,
WILLIAMS, J., HEAD OF CORRECTIONS,
SEDILLO, E., DEPUTY SECRETARY OF OPERATIONS,

       Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff Christopher Cullen, an inmate at the Guadalupe County Correctional Facility, filed a complaint alleging that prison officials burdened his constitutional rights when they exhibited "deliberate indifference" to his "religious and ethnic beliefs" by denying him access to a deck of Tarot cards. (Doc. 1 Ex. A.) In my Proposed Finding and Recommended Disposition filed on January 23, 2007, I recommended granting Defendants' Motion for Summary Judgment on Plaintiff's claim under the First Amendment and denying Defendants' Motion for Summary Judgment on Plaintiff's claims under the Fourteenth Amendment and the Religious Land Use and Institutionalized Persons Act. (Doc. 28.) I then issued an Order instructing Defendants to file a Motion for Summary Judgment relating to "Plaintiff's claim under § 1983 alleging a violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses" and "Plaintiff's claim under [RLUIPA]." (Doc. 34.) This PFRD will address Defendant Hatch and GEO Group Inc.'s Motion for Summary Judgment.

**BACKGROUND**

In January of 2005, Plaintiff purchased a Celtic Dragon Tarot card set from "Music by Mail," an online vendor. (Doc. 16 at 2; Doc. 35 Ex. A.) Prison policies prohibit prisoners from possessing and using Tarot cards. (Doc. 16 Ex. I.) Two prison officials appear to have approved Plaintiff's purchase of the Tarot cards. (Doc. 36 Ex. D.) However, upon the Facility's receipt of the Tarot card set on March 16, 2005, the Property Officer identified the set as contraband and confiscated it. (Doc. 16 Ex. B.) According to Defendants, the Property Officer filled out a "Confiscation and Disposition of Contraband" form. (Doc. 16 Ex. B.) Defendants claim that Plaintiff refused to sign this form. (Doc. 16 Ex. B.)[1] Subsequently, the Facility returned the Tarot card set to the vendor. (Doc. 16 Ex. B.)

On March 30, 2005, Plaintiff, in response to the confiscation of the Tarot card set, filed an administrative grievance seeking the set's return. (Doc. 16 Ex. C.) During the course of the investigation, the Chaplain at the Facility, Sister Vicentia Dorsey, informed the Grievance Officer that Plaintiff had not indicated any specific religious beliefs. (Doc. 16 at 2; Doc. 16 Ex. D.) The Chaplain appears to have based this statement on Plaintiff's Pre-Sentence Report, which lists his religion as "atheist," on Plaintiff's Master Record Entry, which lists his religion as "Adventist," and on Plaintiff's failure to inform her that "he practiced any religion whatsoever." (Doc. 16 Ex. D, F, & G.) Based on these findings, the Grievance Officer investigating Plaintiff's grievance determined that "tarot cards are not necessary for religious purposes." (Doc. 16 Ex. C.) The Warden of the Facility approved the Grievance Officer's recommendation. (Doc. 16 Ex. C.) Plaintiff then appealed the denial of his grievance to the Corrections Department. (Doc. 16 Ex. C). On June 20, 2005, Erma Sedillo, the Deputy Secretary of Operations for the Corrections Department, denied Plaintiff's appeal. (Doc. 16

---

[1] In his Grievance, Plaintiff stated that he was given a Debit Memo and not a confiscation form. In a Memorandum dated June 21, 2005, the Grievance Lieutenant denied Plaintiff's grievance due to the absence of evidence presented to support Plaintiff's claim. (Doc. 18 Ex. 2.)

Ex. C.) On March 16, 2006, Plaintiff filed suit against Timothy Hatch, the GEO Group, Inc., M. Vigil, J. Williams, and E. Sedillo. (Doc. 1 Ex. A.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court examines the record and draws all factual inferences in a light most favorable to the nonmoving party. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). A party "that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.*

If the moving party meets this initial burden, "it falls to the [nonmovant] to 'identify specific facts that show the existence of a genuine issue of material fact.'" *Munoz*, 221 F.3d at 1164 (quoting *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995)). "To avoid summary judgment, the party opposing the motion must establish, at a minimum, an inference of the existence of each essential element to the case." *Foster v. AlliedSignal Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002) (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). Summary judgment will "be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial." *Viernes v. Executive Mortgage, Inc.*,

372 F. Supp. 2d 576, 579 (D. Haw. 2004). In demonstrating the existence of a genuine issue of material fact, the nonmovant may not rely on "the mere allegations or denials" asserted in the party's pleading. FED. R. CIV. P. 56(e). Rather, through affidavits, depositions, answers to interrogatories, or further affidavits, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.*

## DISCUSSION

In their Motion for Summary Judgment, Defendants contend that they are entitled to summary judgment on Plaintiff's claims under both the Fourteenth Amendment and RLUIPA.

### Fourteenth Amendment

*Equal Protection Clause*

To establish an Equal Protection claim, a plaintiff must demonstrate that he was treated differently from other similarly situated inmates and that the "difference in treatment was not 'reasonably related to legitimate penological interests.'" *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). According to the Tenth Circuit, "It is hornbook constitutional law that mere negligence or mistake resulting in uneven application of the law is not an equal protection violation." *Roe v. Keady*, 329 F.3d 1188, 1191-92 (10th Cir. 2003). Rather, to sustain an equal protection claim, a plaintiff "must show a 'discriminatory purpose' leading to disparate treatment." *Roberts v. Champion*, 255 F. Supp. 2d 1272, 1290 (D. Okla. 2003) (citing *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)). "Isolated events adversely affecting an individual are not presumed to be violations of the equal protection clause." *Roberts*, 255 F. Supp. 2d at 1290.

Plaintiff contends that he was "treated differently from other inmates insofar as [he] was

4

denied [his] Tarot cards that other inmates have had." (Doc. 36 at 5.) In support of this argument, Plaintiff points to other groups in the prison, such as Wiccans and Satanists, for whom the use of Tarot cards is permitted. (Doc. 19 at ¶ 10.) Plaintiff contends that the prison's confiscation of his Tarot cards, while at the same time permitting these other groups to use Tarot cards, subjects him to unequal treatment under the law. Plaintiff's argument, however, lacks merit because it fails to allege facts sufficient to establish the purposeful discrimination necessary to sustain an equal protection claim. As the Tenth Circuit has observed, "negligence or mistake resulting in uneven application of the law is not an equal protection violation." *Roe*, 329 F.3d at 1191-92. As I noted in my first PFRD, Plaintiff never alleged that Defendants were aware, or should have been aware, of the connection between Plaintiff's religious beliefs and his use of the Tarot card set. (Doc. 28 at 7.) Plaintiff has never argued that Defendants were aware of his religious beliefs when confiscating the Tarot card set. Absent proof of Defendants' awareness, Plaintiff is unable to demonstrate that Defendants acted with a discriminatory purpose that led to the prison's confiscation of the Tarot cards. *Roberts*, 255 F. Supp. 2d at 1290.

## *Due Process Clause*

In their Motion seeking Summary Judgment of Plaintiff's Due Process claim, Defendants contend that Plaintiff's claim fails because the prison's confiscation of Plaintiff's Tarot cards did not impose an "atypical and significant" hardship on Plaintiff "in relation to the ordinary incidents of prison life." (Doc. 35 at 6.)

"A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). "[A] deprivation occasioned by prison

conditions or a prison regulation does not reach protected liberty [or property] interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.*; *see also Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (holding that the analysis of liberty interest claims under *Sandin v. Connor*, 515 U.S. 472 (1995), applies equally to property interest claims).

Plaintiff points to several procedural flaws that accompanied the prison's confiscation of his Tarot cards. Plaintiff, for example, contends that the prison official who confiscated his Tarot cards failed to provide Plaintiff with the proper confiscation form. Similarly, Plaintiff contends that the prison immediately returned his Tarot cards to the vendor, an action that appears to violate a prison policy requiring a 14-day waiting period between the confiscation and ultimate disposition of confiscated property.[2] In his Response to Defendants' first Motion for Summary Judgment, Plaintiff clarified that "[t]he Tarot Cards were not given to me by the property officer for that day, and no confication [sic] was offered to me at that time, only a Debit memo for postage was offered to me at that time which I did refuse to sign as I did not want them returned to vendor until I had a chance to rectifie [sic] this issue but the property officer Ms Revera [sic] sent them back at the cost to the prison witch [sic] is not the usual policy." (Doc. 18 at 1, ¶ 4.) Plaintiff's argument, liberally construed, appears to be that the prison officials' approval of his purchase of the Tarot cards entitled him to a

---

[2] Plaintiff also alleges that a prison official made a false statement in connection with the confiscation of his Tarot cards. According to Plaintiff, Officer Rivera stated that she had given Plaintiff a confiscation form upon confiscating his Tarot cards. Plaintiff claims that he never received this form. (Doc. 1 at 6, ¶ 5.) An allegation that a prison official made false statements does not, on its own, demonstrate the existence of factual issues necessary to establish a violation of the Due Process Clause. Rather, prison grievance procedures provided Plaintiff an adequate opportunity to contest the alleged false statement made by the prison official. Without a connection to a liberty or property interest, an allegation of an isolated false statement fails to demonstrate the existence of factual issues necessary to establish a violation of the Due Process Clause.

6

property interest in the Tarot cards and that the prison's improper confiscation of his Tarot cards deprived him of his property in violation of the Fourteenth Amendment's Due Process Clause.

   Despite the prior approval of his purchase, as well as the prison's failure to follow prison regulations, the prison's confiscation of Plaintiff's Tarot card set is not the type of "'atypical and significant hardship' that subjected him to conditions much different from those ordinarily experienced by inmates serving their sentences in the customary fashion." *Steffey*, 461 F.3d at 1222. The prison confiscated an object considered contraband under the prison's own regulations. Confiscation of an object deemed contraband, despite prior approval to purchase the item, does not constitute the type of atypical or significant hardship that triggers protection under the Due Process Clause. *Cf. Cosco*, 195 F.3d at 1224 (concluding that a prison regulation permitting prisoners to keep certain items in their cell did not create a property interest in those items); *Worthen v. Hull*, No. CIV-04-976-W, 2005 U.S. Dist. LEXIS 39743, at *12 (W.D. Okla. July 29, 2005) (holding that even if the plaintiff could establish an entitlement under prison policies to possess his sunglasses in prison, the prison official's confiscation of those sunglasses did not constitute an "atypical and significant deprivation" that would trigger a constitutionally protected property interest). Moreover, aside from statements made in his prison grievance procedure, Plaintiff has made no allegation in his pleadings to suggest that he has not received a refund from the vendor, Music by Mail. Plaintiff's focus, in his Complaint and subsequent pleadings, on the confiscation of his Tarot cards and the prison officials' failure to follow prescribed procedures suggests that Plaintiff received a refund. Without an allegation that Plaintiff has not receive a refund, the prison's confiscation of Plaintiff's Tarot cards does not appear to be the type of "atypical and significant" deprivation necessary to establish the existence of a property interest subject to protection under the Due Process Clause.

**Religious Land Use and Institutionalized Persons Act**

In their Motion, Defendants contend that Plaintiff's RLUIPA claim fails because Plaintiff cannot demonstrate that Defendants were aware, or should have been aware, of Plaintiff's sincerely held religious beliefs when they confiscated his Tarot card set. Defendants' Motion, therefore, seeks resolution of two specific questions.[3] First, I must determine the state-of-mind requirement that applies to claims under RLUIPA. Second, I must determine whether Plaintiff raises a factual issue regarding whether Defendants' conduct meets RLUIPA's state-of-mind requirement.

*RLUIPA's State-of-Mind Requirement*

In their Motion, Defendants contend that RLUIPA's state-of-mind requirement mirrors that of the Free Exercise Clause and therefore requires evidence of intentional conduct to establish a violation of RLUIPA. Because RLUIPA does not expressly provide a state-of-mind requirement, I must look to both the statute's language and to its legislative history to determine the state-of-mind requirement applicable to claims under RLUIPA.

Despite the absence of a specific statutory provision regarding RLUIPA's state-of-mind requirement, RLUIPA's statutory language strongly suggests that the state-of-mind requirement applicable to claims under RLUIPA mirrors that of the Free Exercise Clause. RLUIPA's burden of proof section provides, "If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause . . . the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law

---

[3] RLUIPA applies "in any case in which—(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. 2000cc-1(b). I will assume for purposes of this Motion that at least one of the requirements under 42 U.S.C. 2000cc-1(b) has been satisfied.

8

. . . or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2. Prima facie evidence of a violation of the Free Exercise Clause, therefore, appears to set the statutory minimum necessary to establish a claim under RLUIPA and shift the burden of proof to the government to demonstrate that the restriction on the plaintiff's religion is the least restrictive means of furthering a compelling governmental interest. Evidence of intentional conduct is necessary to establish a prima facie claim under the Free Exercise Clause. *Shaheed v. Winston*, 885 F. Supp. 861, 868 (E.D. Va. 1995) ("Since the [prison's failure to accommodate plaintiff's religion] resulted from a misunderstanding . . . the defendants [sic] actions were negligent, not intentional, and the plaintiffs may not rely on § 1983 as a basis for this claim."); *Lovelace v. Lee*, 472 F.3d 174, 194-95 (4th Cir. 2006) ("[W]e conclude that RLUIPA at least reaches intentional conduct because that is what the *Free Exercise Clause* reaches." (italics in original)). RLUIPA's requirement that a plaintiff produce prima facie evidence of a violation of the Free Exercise Clause indicates that evidence of intentional conduct is similarly necessary to establish a claim under RLUIPA.

The absence of an express statutory provision in RLUIPA regarding a state-of-mind requirement similarly suggests that RLUIPA's state-of-mind requirement mirrors that of the Free Exercise Clause. Congress enacted RLUIPA to provide greater protection to prisoners' exercise of religion than that available under the Free Exercise Clause. *See Lovelace*, 472 F.3d at 186. RLUIPA achieves this objective in two specific ways. First, RLUIPA heightens the level of scrutiny applied to prison regulations. Under the Free Exercise Clause, "prison rules that burden prisoners religious practices" need only be "reasonably related to legitimate penological interests" to pass constitutional scrutiny. S. Rep. No. 103-111, at 10 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1898 (quoting

*O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). Under RLUIPA, in contrast, when a prison regulation burdens a plaintiff's religious exercise, the prison must demonstrate that the regulation is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1(a); *see also* MICHAEL B. MUSHLIN, RIGHTS OF PRISONERS § 6:4 (3d ed. 2002). Second, RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. 2000cc-5(7)(A). In light of such express changes to the protections afforded prisoners' religious liberties, RLUIPA's omission of an express provision regarding a state-of-mind requirement suggests that the state-of-mind requirement under RLUIPA was designed to parallel that of the Free Exercise Clause.

The legislative history giving rise to RLUIPA, as well as the legislative history underlying the Religious Freedom Restoration Act, RLUIPA's predecessor, further supports this view of RLUIPA's statutory language. Congress passed RFRA in response to the Supreme Court's decision in *Employment Div. v. Smith*, 494 U.S. 872 (1990) and *Estate of Shabazz*, 482 U.S. 342. In *Smith*, the Court held that laws of general applicability that burden religious practices are constitutional so long as the law is rationally related to a legitimate state interest. Similarly, in *Estate of Shabazz*, the Court held that a prison regulation infringing an inmate's constitutional rights is valid if the regulation is "reasonably related to legitimate penological interests." 482 U.S. at 349. Congress, therefore, enacted RFRA "to restore the compelling interest test previously applicable to free exercise cases by requiring that government actions that substantially burden the exercise of religion be demonstrated to be the least restrictive means of furthering a compelling governmental interest." S. Rep. No. 103-111, at 8 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1897. The legislative history giving rise to RFRA

provides no indication that Congress intended RFRA to impose a less rigorous state-of-mind requirement than that under the Free Exercise Clause.

RLUIPA's legislative history similarly provides no indication of a Congressional intent to impose a state-of-mind requirement less rigorous than that required by the Free Exercise Clause. Congress passed RLUIPA in response to the Supreme Court's decision in *City of Boerne v. Flores*, where the Court declared that the portion of RFRA applicable to the states exceeded Congress' remedial power under the Fourteenth Amendment.[4] Congress' motivations to enact RLUIPA parallel those underlying passage of RFRA. The joint statement made by Senator Hatch and Senator Kennedy, RLUIPA's sponsors, indicates that "[w]hat the Judiciary Committee said about the [compelling interest standard] in its report on RFRA is equally applicable to [RLUIPA]." 146 CONG. REC. S7775 (July 27, 2000). In light of Congress' silence regarding the state-of-mind requirement, RLUIPA's legislative history provides no evidence that Congress intended a more lenient state-of-mind requirement under RLUIPA than under the Free Exercise Clause. *See Lovelace*, 472 F.3d at 218 ("Congress was well aware of the legal backdrop against which it legislated, and where it did not enunciate changes, we would be wise to assume it meant to keep the same law." (Wilkinson, J., concurring in the judgment and dissenting in part)). Accordingly, based on both RLUIPA's statutory language, and its legislative history, I conclude that a plaintiff must provide evidence of intentional conduct to establish a prima facie violation of RLUIPA.

*No Issues of Material Fact Exist Regarding*

---

[4] A noteworthy difference between the statutory language of RFRA and RLUIPA involves the definition of "religious exercise." RFRA originally defined exercise of religion to mean "the exercise of religion under the First Amendment of the Constitution." Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488. RLUIPA, in contrast, defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. 2000cc-5(7)(A).

*Defendants' Awareness of Plaintiff Religious Beliefs*

In their Motion, Defendants contend that Plaintiff's RLUIPA claim fails because Plaintiff cannot demonstrate that Defendants were aware, or should have been aware, of Plaintiff's sincerely held religious beliefs when they confiscated his Tarot card set. Defendants, therefore, satisfy their burden under Rule 56 of "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Thom*, 353 F.3d at 851. Because Defendants' Motion satisfies their burden under Rule 56, the burden shifts to Plaintiff to "'identify specific facts that show the existence of a genuine issue of material fact.'" *Munoz*, 221 F.3d at 1164 (quoting *Thomas*, 48 F.3d at 484). Plaintiff's Response identifies no evidence that could give rise to an inference of intentional conduct on behalf of Defendants. Indeed, in his Objections to my PFRD, Plaintiff appears to concede that Defendants were unaware of his religious beliefs when confiscating and disposing of his Tarot card set. Specifically, Plaintiff states, "I can see some of what Judge W.P. Lynch stated in regards to my not mentioning religion whith [sic] my grievance the resone [sic] being is that I purched [sic] my tarot cards with permission form a caseworker and a warden without chalange [sic] when they signed my Debit memo that stated my purches [sic]." (Doc. 30 at 2.) Plaintiff, therefore, fails to allege that he notified prison officials of the link between the Tarot cards and his religious beliefs. Without allegations of such notification, I cannot construe Plaintiff's Response as raising an issue of material fact regarding whether or not Defendants were aware of Plaintiff's religious beliefs. Accordingly, Defendants' Motion for Summary Judgment regarding Plaintiff's claim under RLUIPA is granted.

**Application to State Defendants**

Defendants' Motion is also dispositive as to Defendants Vigil, Williams, and Sedillo.[5] *See Malak v. Assoc. Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) ("[W]here one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion."); *see also Sports Racing Servs. v. Sports Car Club of America*, 131 F.3d 874, 892 (10th Cir. 1997) ("A court may grant summary judgment sua sponte 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'" (brackets in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986))). Defendants' Motion is equally effective in barring the Fourteenth Amendment and RLUIPA claims against the state Defendants. The state Defendants' liability under Section 1983 and RLUIPA hinges on whether prison officials violated Plaintiff's rights under either the Fourteenth Amendment or RLUIPA. My decision that Plaintiff suffered no deprivation worthy of protection under the Fourteenth Amendment or RLUIPA bars Plaintiff's remaining claims against the non-moving Defendants. Moreover, Plaintiff has had an adequate opportunity to argue in opposition to Defendants' Motion. (Doc. 46.) Accordingly, I recommend that Plaintiff's remaining claims be dismissed against both moving and non-moving Defendants.

## CONCLUSION

For the reasons stated above, I recommend that:

---

[5] The state Defendants, Vigil, Williams, and Sedillo, also filed a Motion for Summary Judgment. (Doc. 44.) My decision regarding Defendants Hatch and GEO is equally effective in barring Plaintiff's Fourteenth Amendment and RLUIPA claims against the state Defendants. It is therefore unnecessary for me to issue a separate PFRD addressing the state Defendants' Motion for Summary Judgment.

1) Defendants' Motion as to Plaintiff's claims under the Fourteenth Amendment's Due Process and Equal Protection Clauses be granted;

2) Plaintiff's claims under the Fourteenth Amendment's Due Process and Equal Protection Clauses be dismissed as to all Defendants;

3) Defendants' Motion as to Plaintiff's claim under the Religious Land Use and Institutionalized Persons Act be granted; and

4) Plaintiff's claim under the Religious Land Use and Institutionalized Persons Act be dismissed as to all Defendants.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.